IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74872-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| STEVEN LEE COOK, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 19, 2017 |

SCHINDLER, J. — A jury convicted Steven Lee Cook of indecent liberties by forcible compulsion. Cook appeals denial of the motion for postconviction DNA[1] testing. Because the superior court did not abuse its discretion in concluding a favorable DNA test result would not demonstrate Cook was innocent of indecent liberties by forcible compulsion on a more probable than not basis, we affirm.

Indecent Liberties Count

This is the second appeal in this case. The facts are set forth in State v. Cook, 191 Wn. App. 1007, 2015 WL 6872295, and will be repeated only as necessary.

Cook is a licensed massage therapist. In June 2014, N.R. went to Cook for massage therapy to treat injuries she sustained in a car accident. N.R. had four massage appointments with Cook.

---

[1] Deoxyribonucleic acid.

On July 6, 2014, N.R. went to the fifth massage therapy appointment. During the massage, Cook pressed on her lower back with one hand so that she could not get up. N.R. stated Cook then touched her genitals with his other hand and repeatedly inserted a finger into her vagina. N.R. testified that after she got home, "[t]he first thing I did was take a shower. I just wanted all evidence of that off of me."

On July 8, N.R. reported what happened to the police. On July 10, N.R. met with Lynnwood Police Department Detective Jacqueline Arnett. Forensic nurse examiner Dale Fukura performed a sexual assault examination on N.R. and obtained four swabs from her vagina. Between July 6 and July 10, N.R. had showered and used the restroom numerous times.

Detective Arnett interviewed Cook on July 15. Cook admitted that he touched N.R.'s vagina during the massage but denied inserting his fingers into N.R.'s vagina.

The State charged Cook with rape in the second degree in violation of RCW 9A.44.050(1)(d) and indecent liberties by forcible compulsion in violation of RCW 9A.44.100(1)(a).

The State called a number of witnesses at trial, including N.R., Detective Arnett, and forensic nurse examiner Fukura.

Detective Arnett primarily worked on sexual assault cases. Detective Arnett testified that when she interviewed Cook on July 15, Cook admitted he "touched the outside of [N.R.'s] vagina." Cook denied inserting his finger into N.R.'s vagina. Detective Arnett told the jury she did not request a DNA test of the swabs collected during the sexual assault examination based on the low probability of obtaining DNA evidence. Detective Arnett believed that "the likelihood of locating touch DNA was incredibly unlikely." Detective Arnett also testified that the presence of Cook's DNA on

the swabs "would have been consistent" with his admission that he had touched N.R.'s vagina.

Nurse Fukura testified that it is standard practice to take vaginal swabs for a sexual assault examination within seven days of the alleged assault. Nurse Fukura testified she collected the four swabs by "insert[ing a Q-tip] into the vagina." Nurse Fukura stated that in this case, where the exam took place four days after the alleged assault, it was "possible" that there could be DNA evidence. She later described finding DNA evidence on the swabs as a "slim possibility." Nurse Fukura further explained that unless she swabbed the exact spot allegedly touched, DNA would not be detected.

Cook testified. Cook denied touching N.R. "in a sexual way" during the massage.

The jury acquitted Cook of rape in the second degree. The jury convicted Cook of indecent liberties by forcible compulsion. We affirmed Cook's conviction. Cook, 2015 WL 6872295, at *1.

## Motion for Postconviction DNA Testing

On December 9, 2015, Cook filed a pro se motion for postconviction DNA testing of the swabs taken during N.R.'s sexual assault examination. Cook argued that "[i]f there is no touch DNA and no traces of massage oil on the inside of [N.R.]'s vagina it would prove no sexual assault occurred." The court held a hearing on the motion. The court denied Cook's motion.

> Mr. Cook, I'm going to deny your motion for these reasons: First . . . , the reality is if that testing showed the existence of your DNA on a swab that was taken from inside the complaining witness's vagina, it would serve only to provide evidence of your guilt for a charge that the jury acquitted you of.
> If, on the other hand, the DNA evidence came back even hypothetically showing someone else's DNA, it would not disprove the allegation of a sexual touching which is the crux of the conviction at issue here.

3

Cook appeals, arguing the superior court erred in denying his request for postconviction DNA testing.

A trial court's decision on a motion for postconviction DNA testing is reviewed under an abuse of discretion standard. State v. Gentry, 183 Wn.2d 749, 764, 356 P.3d 714 (2015); State v. Crumpton, 181 Wn.2d 252, 257, 332 P.3d 448 (2014); State v. Thompson, 173 Wn.2d 865, 870, 271 P.3d 204 (2012); State v. Riofta, 166 Wn.2d 358, 370, 209 P.3d 467 (2009). A court abuses its discretion if its decision rests on facts unsupported in the record or was reached by applying the wrong legal standard. Gentry, 183 Wn.2d at 764; Crumpton, 181 Wn.2d at 257.

Cook claims DNA testing would refute the testimony of N.R. and create a reasonable inference that he is innocent of indecent liberties by forcible compulsion.

Under RCW 10.73.170(3), the court can grant a motion requesting DNA testing only if the "convicted person has shown the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis." In determining whether the evidence would prove his innocence, " 'a court should presume DNA evidence would be favorable to the convicted individual.' " Gentry, 183 Wn.2d at 765 (quoting Crumpton, 181 Wn.2d at 255). When determining whether a favorable result would likely demonstrate innocence, the court must consider all the evidence presented at trial. Gentry, 183 Wn.2d 766-69; Crumpton, 181 Wn.2d at 262; Riofta, 166 Wn.2d at 367-69.

Under RCW 9A.44.100(1)(a), a person is guilty of indecent liberties by forcible compulsion "when he or she knowingly causes another person to have sexual contact with him or her or another . . . [b]y forcible compulsion." RCW 9A.44.010(2) defines "sexual contact" as "any touching of the sexual or other intimate parts of a person done

4

for the purpose of gratifying sexual desire of either party or a third party." The distinguishing feature between the crimes of indecent liberties and rape is the element of penetration. State v. Cain, 28 Wn. App. 462, 465, 624 P.2d 732 (1981). Penetration is not an element of indecent liberties. RCW 9A.44.100, .010(1), (2).

Assuming a favorable DNA test result and considering all the evidence presented at trial, the record supports the court's conclusion that Cook is not innocent on a more probable than not basis of indecent liberties by forcible compulsion.

The evidence established Cook admitted he touched N.R.'s vagina. Detective Arnett testified that Cook admitted he touched N.R.'s vagina.

> He told me that while he was rubbing the inside of — rubbing her legs, that he went up inside of her thigh, that his fingers touched the outside of her vagina, and that he knew that he had touched her vagina because he saw his hand touch her vagina, and that [N.R.] visually flinched when he did that.

The court did not abuse its discretion in concluding a favorable DNA test result would not demonstrate Cook was innocent of indecent liberties by forcible compulsion on a more probable than not basis.

Statement of Additional Grounds

Cook raises a number of challenges to his 2014 conviction in his statement of additional grounds. All of the issues Cook raises are issues he raised or could have raised in his first appeal. A defendant may not raise issues in a second appeal that were or could have been raised in an initial appeal. State v. Sauve, 100 Wn.2d 84, 87, 666 P.2d 894 (1983); State v. Fort, 190 Wn. App. 202, 233, 360 P.3d 820 (2015); State v. Mandanas, 163 Wn. App. 712, 716, 262 P.3d 522 (2011). This rule applies even to issues of constitutional magnitude. Sauve, 100 Wn.2d at 87; Fort, 190 Wn. App. at 233-34; Mandanas, 163 Wn. App. at 717. The proper method to raise new issues not

addressed in a first appeal is through a personal restraint petition. Sauve, 100 Wn.2d at 87; Fort, 190 Wn. App. at 234; Mandanas, 163 Wn. App. at 717.

Appellate Costs

Cook asks us to deny appellate costs. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2. However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Cook was found indigent by the trial court. Under RAP 14.2, if the State has evidence indicating that Cook's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner. State v. St. Clare, 198 Wn. App. 371, 382, 393 P.3d 836 (2017).

We affirm.

WE CONCUR: